ORIGINAL

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

CLERK OF DISTRICT COURT
NORTHERN DIST. OF TX
FORT WORTH DIVISION
FILED
2019 FEB 21   AM 11:44
DEPUTY CLERK _____

| | |
|---|---|
| JOHN HINKLEY, and STEVE RICE<br>*Plaintiffs, on behalf of themselves<br>and all others similarly situated,*<br><br>vs.<br><br>ENVOY AIR, INC<br>*Defendant* | NO: 4:19-CV-014A |

### FIRST AMENDED COMPLAINT
### AND JURY DEMAND

TO THE HONORABLE JUDGE OF THE COURT:

Plaintiff Steve Rice and John Hinkley ("Plaintiffs"), on behalf of themselves and all others similarly situated, alleges as follows:

### I.   SUMMARY OF CLAIMS

This is a disparate impact employment case. Plaintiffs brings this action alleging violations of 29 U.S.C. §621 *et seq*, the Age Discrimination in Employment Act ("ADEA"); the Texas Labor Code §21.051, *et seq*; and for breach of contract and promissory estoppel.

Defendant actively ranked their new employees by age, oldest to youngest. Defendant then advised the employees (based on age) to which airplane to choose. Simply put, Defendant encouraged the older employees to choose the most complex aircraft with the least training aides.

The younger employees who were trained on less complex aircraft, with established training aids, were statistically more successful than the older employees. To add insult to injury, after Plaintiffs were constructively terminated, Defendant sought to recover the signing bonuses that were paid to Plaintiffs as an inducement for Plaintiffs to work for Defendant.

## II. PARTIES

1. **Named Plaintiff,** John A. Hinkley ("*Hinkley*") is an individual who resides at 326 Manderley Lane, Springtown Texas, 76082. Hinkley was an employee within the meaning of the ADEA and belongs to the class of employees protected under the statute, namely, employees over the age of 40.

2. **Named Plaintiff,** Steven Rice ("*Rice*") is an individual who resides in 153 Michelle Lane, Boerne Texas, 78006. Rice was also an employee within the meaning of the ADEA and belongs to the class of employees protected under the statute, namely, employees over the age of 40.

3. **Defendant,** Envoy Air, Inc, ("*Envoy*") is a corporation. It's principle place of business is 4301 Regent Blvd, Irving Texas, 75063. Defendant is an employer within the meaning of the ADEA, is engaged in an industry affecting commerce, and has 20 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year.

## III. JURISDICTION

4. The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. The lawsuit because the suit arises under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §621 et seq., including incorporated provisions of the Fair Labor Standards Act (FLSA), 29 U.S.C. §201 et seq.

5. The Court has personal jurisdiction over all parties to this civil action, as Plaintiffs are Texas residents, and Defendant is a corporation doing business in Texas.

## IV.   FACTUAL ALLEGATIONS

### *Envoy's Hiring Policy*

6. In the past few years, Envoy has dramatically increased its hiring quota for pilots. Envoy's class size is 2-3 times lager, on average, than other airline piloting classes. Plaintiffs responded to Envoy's advertisements and applied with the hope of one day becoming commercial airline pilots. (Envoy is part of the American Airlines Group.)

7. To incentivize applicants to apply to the program, Envoy offered a hiring bonuses ranging from $23,000 to $28,000. Envoy reserved the right to recapture the bonuses, if a new hire was terminated "for cause." No such cause existed in this case.

### *Plaintiff Hinkley*

8. Plaintiff Hinkley is 51 years old, and was attempting to start a second career in the Airline industry. He was (and is) amply qualified to work for Envoy. At the time of his hiring, Hinkley already had his pilot's license, as well as his instrument license, his commercial license, and his multi-engine license.

9. Hinkley was already an Envoy Employee in the midst of the training program when he requested leave to assist his minor son who required medical attention. Despite this legitimate request for leave to care for his minor son, Envoy refused to make medical accommodations and instead instructed him to quit, insisting that individuals his age were not likely to pass the training program for the EMB-175, anyway. Hinkley was constructively terminated from his position by Envoy, without cause.

10. On July 29, 2018, Hinkley received a demand letter from an Envoy Attorney, demanding that he re-pay both of his hiring bonuses. But for the fact that Hinkley had been unlawfully terminated, he would not have received a demand letter.

### *Plaintiff Rice*

11. Rice is **56** years old, and was also attempting to start a second career in the airline industry. He too was (and is) amply qualified to work for Envoy. At the time of his employment, Rice already had his pilot's license, as well as his instrument license, his commercial license, and his multi-engine license.

12. In early 2017, Rice applied for a pilot position at Envoy. On February 2, 2017, Rice completed the hiring process and received his hiring bonus. Envoy instructed Rice to complete his ATP/CTP class. Rice did so.

13. Envoy put Rice into the training program for the EMB-175. Despite being very well qualified for his position at Envoy air, Envoy constructively terminated Rice, without cause.

14. In September of 2018, Rice received a demand letter from an Envoy Attorney demanding that he re-pay both his hiring bonuses. But for the fact that Rice had been unlawfully terminated, he would not have received a demand letter.

### *Envoy's Training Policy*

15. Plaintiffs, and those similarly situated, quit their jobs in order to join Envoy.

16. During the training, Defendant implement training a policy that had a disparate impact on the newly hired pilots over the age of 40. Specifically, Defendant ranked the incoming pilot training classes by age, and then assigned different aircrafts (and training processes) based upon age. This disparate treatment had an adverse effect on the plaintiffs, as well as those similar situated.

17. On the first day of training, instructors encouraged Plaintiffs and older trainees to select the more complex EMB-175. After trainees were assigned their aircraft, training began.

18. However, Envoys' training process for the EMB-175 was deficient and not fully established. For example, the iPads which were issued as a training aid did not have adequate software to run the training program. Instead of remedying the situation, trainees were responsible for updating the iPads issued by Envoy. This served as a hinderance to their ability to study the EMB-175 systems adequately. When Plaintiffs approached their Envoy instructors for assistance in updating the iPads issued by Envoy, the instructor did not know how to assist.

19. Instructors for Envoy had to call technicians on numerous occasions before they begin their training. On numerous occasions the instructors told the trainees to study for one subject, and then the next day told them that that subject was not important. In short, the EMB-175 training program was not well established.

20. Eventually, the older trainees were informed that they were less likely to pass the in house training program. After they selected the aircraft, they were told that training on the EMB-175 was "like trying to drink from three fire-hoses" and much harder then any of the other planes.

21. Defendant told Plaintiffs and those similarly situated that they should just quit because the older trainees have a far less chance of passing.

22. Plaintiffs were told that resignation was the only alternative. Envoy did not explain to the older employees that they could obtain additional instruction from Envoy. Envoy did not explain to Rice or Hinkley that they were being terminated "for cause."

23. Envoy claims that their bonus repayment provision is to improve employee retention. However, based on information and belief, Envoy actively encouraged their older employees to quit and a disproportionate higher percentage of older people are terminated or forced to quit after receiving employment with Envoy.

24. On information and belief, Envoy's training policies and practices with respect to

Plaintiffs, and similarly situated worker age 40 or older, are disadvantageous as compared to those used with workers under 40 years old, who Envoy treats preferentially and hires in significantly greater numbers.

25. On information and belief, Envoy failed to train plaintiffs and other similarly situated individuals in favor of younger applicants under the age of 40.

26. On information and belief, Envoy's discriminatory conduct has occurred by reckless indifference and/or intentional discrimination.

27. On information and belief, Envoy managers and executives with control and/or responsibility for training, practices, and decisions (including those for plaintiffs and similarly situated individuals) have promoted and/or implemented training procedures that had a negative or discriminatory impact on older employees who were 40 and older.

28. Plaintiffs believe that upon a review of Envoy's retention files, the review will show that employees over the age of 40 are statistically treated differently through the training process, then younger employees.

## V. CLASS ACTION ALLEGATIONS

29. *First*, upon information and belief, the class is so numerous that joinder of all members is impracticable. The total number of employees which were subjected to Defendant's age driven policy is only known to the Defendant. Nevertheless, upon information and belief, there are no less than 50 putative class members who were subjected to the policy and in the protected class. Joining all putative class members would be extremely difficult, as they live across the country, and most do not know each other.

30. *Second*, there are questions of law or fact common to the class. The putative class members have all suffered the same injury, specifically they were separated by age and then

assigned to different aircraft and training methods. The claims depend on a common contention that a single training policy implemented by Envoy had a disparate impact. Determining the validity of the contention will resolve a central issue in each of the putative class members claims.

31. *Third*, the claims of the Mr. Hinkley and Mr. Rice are typical of the claims or defenses of the class. Both Plaintiffs have the same interests and have suffered the same type of injury as the rest of the class, as they were all subjected to the same training policies.

32. *Fourth*, Mr. Hinkley and Mr. Rice will fairly and adequately protect the interests of the class. Specifically, Mr. Hinkley and Mr. Rice: (a) are members of the putative class, (2) have the same interests as, and no conflicts with, the class members, (3) have suffered the same injury as the class members, and (4) have competent counsel.

## VI.   CAUSES OF ACTION

### *Count I–Age Discrimination*

33. Plaintiffs incorporates by reference all the allegations contained in this complaint, as if those allegations were set forth herein verbatim.

34. The claims for violation of the Texas Labor Code are brought by Plaintiffs and similarly situated individuals.

35. Prior to their termination, Plaintiff had faithfully served Defendant in their capacity as an employee and faithfully performed all duties expected of them. The acts committed by the ages, servant and/or employees of the Defendant in discriminating against and wrongfully terminating Plaintiffs based on their age all constitute violations of Tex. Labor Code § 21.051, et seq., including §§ 21.051, 21.101, 21.15, and any other applicable provisions.

36. The evidence will demonstrate:

   A. Plaintiffs belong to a protected class based on age:

    B. Plaintiffs were qualified for their position;

    C. Plaintiffs were subject to adverse employment action(s);

    D. Plaintiffs received disparate treatment based on their age; and,

    E. Defendants' training policies has a disparate impact on the protected class.

37. The ADEA claims herein are brought by Plaintiffs and similarly situated individuals.

38. Throughout the liability period, Envoy has engaged in a pattern and practice of discriminating against individuals who are age 40 and older by:

39. Envoy acted recklessly in the implementation of its hiring, training, and employment practices. As a result, its policy had an adverse impact on individuals who are 40 years old and older, and treats preferentially individuals who are under 40 years old.

40. Envoy filled a disproportionality larger percentage of its workforce with individuals under 40 years old, even when there were many individuals age 40 or older who are available and well-qualified for the positions at issue, and there is a disproportionately larger percentage of retention for those under 40 years of age then older employees. Such discrimination against Plaintiffs on the basis of age is in direct violation of 29 USCA §§ 621–634.

41. As a result of Envoy's age discrimination practices, Plaintiffs have been harmed.

### *Count II – Breach of Contract*

42. Plaintiffs incorporates by reference all the allegations contained in this complaint, as if those allegations were set forth herein verbatim.

43. The breach of contract claims herein are brought by Plaintiffs and similarly situated individuals.

44. Plaintiffs promised to work for Envoy and to complete their training program.

45. As consideration for Plaintiffs' promise, Envoy promised to provide adequate instruction

to enable Plaintiffs to complete their training.

46. Envoy breached its promise.

47. As a result of Defendant's breach, Plaintiffs have been harmed.

### *Count III – Promissory Estoppel*

48. Plaintiffs incorporates by reference all the allegations contained in this complaint, as if those allegations were set forth herein verbatim.

49. The Promissory Estoppel claims herein are brought by Plaintiffs and similarly situated individuals.

50. Envoy promised Plaintiffs that it would provide adequate instruction to enable Plaintiffs to complete their training.

51. It is foreseeable by Envoy that Plaintiffs would rely on these promises when accepting an employment position.

52. Plaintiffs substantially relied on Envoy's promise to their detriment. Plaintiffs quit and/or gave up other employment opportunities to work for Envoy.

53. It would be unjust if Envoy were permitted to disavow its promises.

54. As a result of Envoy's conduct, Plaintiffs have been harmed.

### VII.   **EXHAUSTION OF ADMINISTRATIVE REMEDIES**

55. All administrative prerequisites have been fulfilled.

56. Plaintiffs did not discover the age disparate impact of Defendant's policy until at least September 13, 2018, when Defendant aggressively pursued Rice, falsely claiming that Defendant was entitled to repayment of their signing-bonuses arising out of their employment agreements.[1]

---

[1] Plaintiff Hinkley received a demand letter on July 29, 2018. However, it was not until he learned that Plaintiff Rice had also received a demand letter (on September 13, 2018), that the two begin to inquire about the age disparate impact of Defendant's policy.

57. Until Plaintiffs received the demand letters, they did not learn they were ineligible for rehire. Until Plaintiffs received the demand letters, they did not learn that their termination was the result of a policy that had an age disparate impact. Until Plaintiff received the demand letters, they did not learn that Defendant would take hostile actions directed at them. Defendant's September 13, 2018 demand letter to Rice, caused both Plaintiffs to conduct the necessary inquiry which uncovered the age disparate impact of Defendant's assignment of aircraft and training practices.

58. On November 12 and 19, 2018, both Plaintiffs filed a charge with the United States Equal Employment Opportunity Commission ("EEOC") and the Texas Workforce Commission Civil Rights Division ("TWCCRD"). Both Plaintiffs had difficulty with the online filing portal, because all of the calendar dates for an in-person, or telephonic, appointment were full. Out of an abundance of caution, on November 30, 2018, Plaintiffs again re-filed a charge. This time the portal worked. Regardless, their charge of unlawful practice was submitted within 300 days of Plaintiffs' discovery of the unlawful employment practice.

59. On January 7, 2019, Defendant filed a notice of removal to the United States District Court for the Northern District of Texas. On February, 7, 2019, this Honorable Court, ordered Plaintiffs and Defendant to file amended pleadings. On February 21, 2018 this Amended Petition was filed. Regardless, 60 days have transpired since Plaintiffs filed their charge with the EEOC and TWCCRD. Furthermore, Plaintiffs have filed this Complaint within 90 days after it obtained that statuary right. If this Honorable Court finds that the administrative process should be afforded more time, Plaintiff respectfully seeks a stay of proceedings until such time as the Court deems just.

## VIII.   PRAYER

60. As a direct and proximate result of Defendant's unlawful (1) age discrimination, (2) breach of contract, and (3) unequitable conduct, Plaintiffs, and those similarly situated, have suffered the following injuries and damages and prays for relief as follows:

   A. Damages representing wages which they have lost, and will lose in the future, including loss of wage-earning capacity, since the date on which the unlawful conduct occurred, including any and all salary increases, or promotion opportunities they would have receive in the absence of the unlawful conduct.

   B. Damages representing all lost fringe benefits;

   C. Damages for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of live and other nonpecuniary losses;

   D. Damages for both pre-judgement and post-judgment interest;

   E. Defendant's actions were committed with malice or with reckless indifference to Plaintiff's rights and accordingly, they seek punitive damages; and,

   F. Plaintiffs are entitled to an award of attorney's fees and costs under the ADEA, and pursuant to § 38.001 of the Tex. Civ. Prac. & Rem. Code.

## IX.   JURY DEMAND

61. Plaintiff demands a trial by jury in accordance with federal law, as to all issues so triable.

Dated: February 21, 2019.                                      Respectfully submitted,

By: /s/ Kirk Claunch
Kirk Claunch
State Bar No. 04326075
301 W. Central Avenue
Fort Worth, Texas 76164
(817) 335-4003 – Office
(817) 335-7112 – Facsimile

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

This is to certify that on the 21st day of February, 2019, I filed the foregoing document with the clerk of the court for the U.S. District Court, Northern District of Texas. A copy was sent to opposing counsel via the electronic case filing system which sent a "Notice of Electronic Filing" to the following attorney of record who has consented in writing to accept this Notice as service of this document by electronic means and also by facsimile:

Lindsay Hendrick
2727 N. Harwood Street
Dallas, Texas 75201
214.220.3939 – Office
214.969.2985 - Direct
214.969.5100 - Facsimile
lahendrick@jonesday.com

Kirk Claunch